## SWITCHING CHARGES WITHIN MUNICIPAL LIMITS.

Common Pleas Court of Hamilton County.

THE RICHTER GRAIN COMPANY v. THE CINCINNATI, HAMILTON
& DAYTON RAILWAY COMPANY AND THE CLEVELAND,
CINCINNATI, CHICAGO & ST. LOUIS RAILWAY
COMPANY.*

Decided, October 2, 1913.

*Railways—Construction of Section 9000—Fixing the Charges for Switching Within Municipal Limits.*

1. A switching service, within the meaning of provisions of Sections
   8998, *et seq.*, General Code of Ohio, is one which precedes or follows
   a transportation service, and applies only to a shipment upon
   which legal freight charges have already been earned or are to be
   earned.
2. A transportation service is not a switching service within the mean-
   ing of the foregoing sections simply because the service is be-
   tween termini which are entirely within the switching limits of a
   municipality.
3. Where a transportation service is to be made over the lines of two
   connecting common carriers, between points which are entirely
   within the switching limits of the city, it is not a violation of the
   provisions of the foregoing sections for the carrier or carriers to
   charge in excess of the rate or rates set forth in Section 9000, Gen-
   eral Code, provided the rate charged is fair and reasonable and in
   proportion to the value of the service rendered.

*Waite & Schindel* and *Harmon, Colston, Goldsmith & Hoadly,*
for the demurrers.

*Charles A. Groom,* contra.

GEOGHEGAN, J.

Heard on demurrers to petition.

*Affirmed by the Court of Appeals, *Richter Grain Co. v. C., H. & D. Rail-
way Co.*, 19 C.C.(N.S.), —.

The petition contains three causes of action, but, aside from certain variations in the dates, car numbers, amounts of charges and points of destination, the three causes of action present substantially the same considerations upon the demurrers.

The first cause of action in substance recites that the Fairmount Grain Elevator is contiguous to the railroad tracks of the Cincinnati, Hamilton & Dayton Railway Company, being connected therewith by a side-track; that the tracks of the Cleveland, Cincinnati, Chicago & St. Louis Railway Company are contiguous to the Big Four Grain elevator, and are connected therewith by a side-track; that all of the aforesaid tracks are within the proper terminal limits of the city of Cincinnati and that the tracks of the two defendant companits are connected with each other, and that the distance from the Big Four Grain Elevator to the general freight warehouse of the Cleveland, Cincinnati, Chicago & St. Louis Railway Company does not exceed one mile. The petition further recites that on or about the 7th day of May, 1912, it caused to be transported over the Cincinnati, Hamilton & Dayton Railway Company, from said Fairmount Elevator in Cincinnati, to the Big Four Grain Elevator, one car of corn, and that it requested that said shipment be made to said Big Four Grain Elevator, and to the switch known as Big Four Grain Elevator switch, and that the defendant, the Cincinnati, Hamilton & Dayton Railway Company, demanded and received from plaintiff for transporting said car the following amounts, to-wit: From Fairmount Elevator to Cincinnati, $5.23; for switching by the Cleveland, Cincinnati, Chicago & St. Louis Railway Company, $2; and there is a further allegation that both defendants did demand and receive from plaintiff for switching from the tracks of the said the Cincinnati, Hamilton & Dayton Railway Company. onto and over the tracks of the Cleveland, Cincinnati, Chicago & St. Louis Railway Company, to the said Big Four Elevator, the sum of $2; that under the provisions of Section 9000 of the General Code they were only permitted to charge the sum of $1.50 for the service rendered, and the plaintiff therefore prays

for judgment against the defendants in the sum of $150, being the amount of penalty allowed by the statute in such cases.

Both defendants filed demurrers to the petition upon the theory that the service rendered was not a switching under the purview of Section 9000 *et seq.,* General Code, but a transportation service, and that therefore the defendants were not concluded by the rates established for switching service in Section 9000, but could charge a fair and reasonable amount for said services subject to the provisions of general laws in such cases made and provided.

Section 8998 of the General Code provides that when the tracks of one company lie contiguous to coal mines, stone quarries, etc., it shall switch the cars of other companies, at the request of such companies, or the shippers, over and upon the tracks so lying by such mines, quarries, manufacturing establishments, etc., for the purpose of loading or unloading grain or other freight into or from such elevators, warehouses, etc., without demurrage, for forty-eight hours.

Section 9000, General Code, provides as to the amounts that shall be charged for said switching services, and Section 9002 provides a penalty for the violation of any of the provisions of the sections of $150.

I do not think that the service set forth in the petition constituted a switching service as is contemplated by the provisions of the legislative act referred to above. A switching service either precedes or follows a transportation. Here, however, the express averments of the petition are that the car was to be shipped from one point, to-wit, the side-track of the Fairmount Elevator, to another point, to-wit, the side-track of the Big Four Grain Elevator. It is true that both points were within the terminal limits of the city of Cincinnati, but that fact does not of necessity constitute the service rendered a switching service. I think it was the intention of the Legislature that a switching service should be that character of service that immediately precedes or follows a transportation, that is, if it were necessary at the beginning to carry cars from a side-

track over the line of a carrier who was not to perform the transportation service in order that they might reach the lines of the carrier who was to perform the service, that a certain fixed statutory charge could only be charged by either carrier for this service, or if the cars had been transported to the terminal point and it was necessary in order to make delivery to get them to a side-track that was contiguous to the line of another railroad company, then the railroad company receiving the cars from the transporting carrier would perform the switching service and either it or the transporting carrier could only charge the sum fixed by statute for that service.

This seems to be the view taken by the Supreme Court of Georgia in *Dixon* v. *Railway Company*, 110 Ga., 173, wherein a switching service is defined as follows:

"A switching or transfer service is one which precedes or follows a transportation service, and applies only to a shipment on which legal freight charges have already been earned, or are to be earned."

The court in that case gives an illustration of what is a switching service as follows: If a shipment were made from Macon, Georgia, to Savannah, Georgia, the shipper would be liable for regular rates of transportation from Macon, Georgia, to Savannah, Georgia; then if the freight were to be transported from the terminal at Savannah, from the depot of the delivering company, over the track, side-track or main track of another company, to the side-track of the shipper, this carriage would constitute a switching or transfer service. Or, if the shipper desired to ship a carload from Savannah, Georgia, to Macon, Georgia, and his side-track were not connected with the road over which he desired to ship and it would be necessary to have the car transported from his side-track over the main track, spurs or side-tracks of one road to the freight station of the road which was to carry the freight to Macon, then the service required to transfer the car to the road which would carry the car to Macon, would constitute switching or transfer service.

Now, we have no such facts presented by the petition here. Here the allegation is that the transportation was made from the Fairmount Elevator to the Big Four Elevator. It is true that the petition sets forth that the charge was made for switching, but it is not the *designation* that is given the service by either party that controls, but the *character* of the service rendered. If the service is in fact a transportation, it is immaterial that it may be designated a switching; if it is a switching it is immaterial that it may be called a transportation. The movement here is a movement between two defined and designated points. It is true they are both alleged to be within the terminal limits of the city of Cincinnati, but it does not seem that that fact alone would necessarily constitute the service rendered a switching service.

In *Grand Trunk Railway Company* v. *Michigan Railroad Commission et al*, 798 Fed., 1009, decided by the court of appeals of this circuit, at page 1017 the court say, in discussing certain statutes of Michigan involving charges for intracity transporation.:

"It is also clear that a statute validly may, and that the statutes we are considering do, authorize the employment of such depots, side-tracks, and team tracks of a railroad for transportaing car load freight to or from the junction of such road with another road as a substantial part of a continuous transportation routing, where such junction is outside the city limits. Does the fact that such junction is within the city limits necessarily differentiate the two classes of service so as to make the one a transportation within the meaning of the law and the other a mere switching service? And this in view of the fact that the distances between the city depots and tracks of a railroad and its intracity junction with another road may be as great as between such city depots and tracks and junctions outside the city, or as great as the average distance between extracity freight stations in a fairly populous section. Or does the fact that such freight movement begins and ends within the limits of a city necessarily characterize its movement between junction point and the station of receipt or delivery as a switching transaction rather than as part of an actual transportation between two termini; that is to say, between the place where the

movement begins and the place where the movement ends? Upon principle, there seems no necessary distinction with respect to either of the two cases suggested.''

It is apparent here that the service rendered was a service between two termini in the city of Cincinnati. The transportation contracted for was between these two points and there is not involved in the matter such a transfer service as is designated by the Supreme Court of Georgia in 110 Ga., *supra*.

My attention has been called to the decision of Judge Gorman, in the case of *The J. B. Doppes' Sons Lumber Company* v. *Cleveland, Cincinnati, Chicago & St. Louis Railroad Company,* 14 Nisi Prius (N.S.), 392, decided March 22, 1913. In that case Judge Gorman recognized the well defined distinction between a transportation and a switching service, but was compelled to hold upon the pleadings as presented to him that part of the service set forth therein was a transportation and part a switching, but his decision can not in any way be construed to hold that a service is a switching service solely because it is rendered within the terminal limits of a city.

I can not bring myself to understand that it was the intention of the Legislature to include within the operation of the statute any service other than switching service as so lucidly and clearly set forth in 110 Georgia, *supra*.

I am therefore of the opinion that the petition fails to state a cause of action such as would entitle the plaintiff to recover the penalty set forth in Section 9002.

But counsel for the defendants has called my attention to the fact that since the submission of these demurrers the Supreme Court of the United States has declared that the imposition of penalties like the one provided for in Section 9002, General Code, is the taking of property without due process of law, contrary to the Fourteenth Amendment of the Federal Constitution. The case referred to is *Missouri Pacific Railway Company* v. *Tucker,* decided June 16, 1913, and found in the advance sheets of the U. S. Supreme Court Reports, in the edition of August 1, 1913. In that case it was sought to recover a penalty of $500 under a

Kansas statute providing for the recovery of the same from any railroad company which demanded and received for a transportation service an amount in excess of that fixed by the statute. The court discusses the proposition that a common carrier is not at liberty to accept or decline shipments generally, but it must receive and carry them when offered and must be ready to name to shippers the rates at which the service will be rendered. The court holds that while it may be within the power of the state to impose double or treble damages on a carrier for overcharging transportation rates, it is beyond its power to impose a fixed amount as liquidated damages in every case regardless of, and as a general rule many times in excess of, actual damages. To do so would be to deprive the carrier of its property without due process of law in violation of the Fourteenth Amendment.

The court in that case bases its opinion largely upon the rule in *Ex parte Young,* 209 U. S., 123, wherein it was held that a law imposing penalties for overcharges of the character herein complained of, so enormous and so severe as to intimidate the company and its officers from resorting to the courts to test the validity of the legislation, has the same result as if the law in terms prohibited the company from seeking judicial construction of laws which deeply affect its rights. The court holds that the subject of the reasonableness of rates is one proper for judicial inquiry, but that if the penalty for the violation of rates fixed by statute is so great as to deter the officials of the railroad company from testing the same, in view of the fact that if unsuccessful the official responsible must suffer imprisonment or pay fines, is in effect to close up all approaches to the courts and thus prevent any hearing upon the question whether the rates as provided by the acts are not too low, and therefore invalid, and the court holds that the imposition by the Kansas statute of the penalty of $500, which is termed by the act to be liquidated damages, is so grossly out of proportion to the actual damages as to be arbitrary and oppressive and nothing short of taking property without due process of law and therefore contrary to the Fourteenth Amendment to the Federal Constitution.

While it is not necessary, in view of what I have said before, to apply this principle to the case at bar, nevertheless, I do mention it for the purpose of pointing out the view taken of legislation of this kind by the highest court in the land, especially in so far as it provides for a penalty so out of proportion to the actual damages suffered by the person complaining.

In the first cause of action here the amount of overcharge is fifty cents; in the second cause of action the amount of overharge is fifty cents; and in the third cause of action the amount of overcharge is $3. Still, in each cause of action it is sought to recover a penalty of $150. However, in view of my opinion that the service set forth in the petition is not a switching service, but a transportation service, it is not necessary for me to determine that the case at bar comes within the purview of the rule laid down by the Supreme Court in the Tucker case, *supra*.

The demurrers will be sustained.